JOSEPH ZDANCEWICZ v. BURLINGTON COUNTY TRAC-TION COMPANY.

Submitted July 3, 1908—Decided November 9, 1908.

1. One who enters into a written contract, without fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect.
2. A release, under seal, of a claim for personal injuries, is a bar to an action for such injuries, unless obtained by fraud or deceit.

---

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff, *George M. Bacon* and *G. Dore Cogswell.*

For the defendant, *Gaskill & Gaskill.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought to recover damages for injuries received by the plaintiff while upon one of the cars of the defendant company, and which he averred were due to carelessness in the operation of the car. The defendant pleaded the general issue, and also a release under seal executed by the plaintiff. The plaintiff replied to the plea of a release, denying that he had executed such a writing; and, further, that the release had been obtained from him by fraud and covin. At the trial of the cause, after the plaintiff had put in his case, and the defendant had proved the execution of the release by the plaintiff, and the circumstances attending it, the court suspended the putting in of the defendant's proofs on the question of its alleged negligence until after hearing the rebutting testimony of the plaintiff on the subject of the execution of the release. When that proof was in the court advised counsel for the defendant that it was unnecessary to submit evidence on the question of negligence, as the release constituted a complete defence to the action, and thereupon directed a verdict for the defendant. The plaintiff now insists before us that, in taking the case from the jury, the trial court erred, and that, for this reason, the rule to show cause should be made absolute.

The plaintiff admitted the signing of the release. The proof offered by the defendant on the subject of its execution consisted of the testimony of Mr. Eckard Budd, the attorney of the company, and that of Dr. Prickett, a surgeon at the hospital to which the plaintiff had been taken after the accident, and who was in attendance upon him. Mr. Budd's testimony was that, as a result of instructions received by him from one of the officers of the company, he prepared a written release of all claim which the plaintiff might have against the company, in consideration of the payment of $100 by

12        NEW JERSEY SUPREME COURT.

Zdancewicz v. Burlington County Trac. Co.    77 N. J. L.

the latter to the former; that he took the draft of the release and $100 in cash to the hospital, and there had an interview with the plaintiff in the presence of Dr. Prickett. He thus states the interview: "The minute that I came into the room, and sat at the foot of the bed, this man (*i. e.*, the plaintiff) said: 'Who is that man?' Dr. Prickett spoke up and told him that I was the lawyer that represented the trolley company; and then I spoke up and said that I was the lawyer that represented the trolley company; that I had been told he wanted to settle any claim he had against the company for $100, and I asked him if that was right, and he said it was. I then said I had a release which I would read, and I read this release through. When I got through I said to him 'Do you understand that release?' and he said—I don't remember whether he said no, or that he didn't know—I then handed the release to Dr. Prickett and said 'Doctor, you take that release and read it slowly to him, section by section, and explain it to him.' So the doctor took the release up and read it to him, and as he read it he told him what that meant in English, stripped of its legal verbiage, and when he got through he says 'Do you understand it?' and he said 'Yes.' Then he, of his own volition, made a remark, and I think I remember his exact words, because I was very careful about this, and because I wanted to have it all straight; he then said, when Dr. Prickett asked him 'Do you understand this?' 'I want put in there they give me work.' The release had nothing in it about work; it was a straight release for so much money; and after Dr. Prickett had read the release to him and asked him if he understood it, without any suggestion from Dr. Prickett, or from me, he said in answer to that question, immediately after the reading and explaining of the release, 'I want put in there they give me work.' Dr. Prickett then told him that the trolley company could not do that, and explained to him why; and then I told him that this trolley company might be sold some time, and that they could not have anything like that put in as a thing that would hang over them, and that if he signed this release he would get the $100, but that I would not

assure him he would get work. And he then—this right arm that was cut off, if I remember right, was bandaged up, and it was kind of sticking up—and kind of looking down toward this arm he made some remark about it, that he could not work with this arm off; I don't remember the exact sentence that he used in reference to that; and I told him that I was very sorry, but that the trolley company could not guarantee him work; that as far as I was concerned individually I would do what I could to have the trolley company employ him, but that if he signed this paper he would get the $100, and that would be all he would ever get from the company for losing his arm. I then said to him, 'Now do you understand?' and he said 'Yes,' and I held this $100 up, and I said, 'If you sign this paper you get the $100, and you can never get any more from the trolley company. He said 'I understand.' He then made his mark, I think, to the paper." Mr. Budd is corroborated in every particular in his statement of what was said by himself, Dr. Prickett and the plaintiff, on the occasion of the execution of the release, by the testimony of Dr. Prickett. Nor does the plaintiff, as I read his testimony, deny that Mr. Budd and Dr. Prickett made the statements and explanations to him which they testified to. His story was that he did not understand what was said by them; that he supposed the paper was a receipt for sick benefits which he was entitled to receive from a benevolent society of which he was a member, and that he signed it under that belief. He did not even deny that he made the replies which Mr. Budd and Dr. Prickett testified to, except so far as his statement that he did not understand what was said to him by them is such a denial.

The rule of the common law that a party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect, is in full force in this state. Its application led the Court of Errors and Appeals, in the case of *Fivey* v. *Pennsylvania Railroad Co.,* 38 *Vroom* 627, to hold that a release similar in form to that in the present case, constituted a complete bar to an action for

personal injuries, unless obtained by fraud or deceit. Fully understanding that such was the law, plaintiff's counsel replied for his client denying the execution of the release, and also averring that it was obtained through fraud and covin. The signing of the release, as has already been stated, was admitted by the plaintiff at the trial. The only question, consequently, to be considered in the determination of this rule, is whether there is anything in the proofs submitted upon which fraud or deceit in obtaining the release may be predicated. The only persons who have any knowledge of the facts and circumstances attending its execution are the plaintiff, Mr. Budd and Dr. Prickett. The testimony of the three makes it manifest that no fraud or deceit was practiced by the defendant, or anyone representing it. The plaintiff's belief (which, in disposing of this rule, we assume he entertained) that the paper he signed was a sick benefit receipt, was not induced by anything which was said to him on the occasion of his signing. He said nothing, either to Mr. Budd or to Dr. Prickett, to indicate that he did not fully understand the contents of the paper, or its purpose. The case being barren of any evidence which tends to support the averment of the plaintiff's replication that the release pleaded by the defendant was obtained by fraud and covin, the trial court was justified in directing a verdict for the defendant. *Fivey* v. *Pennsylvania Railroad Co., supra.*

The rule to show cause will be discharged.