ALFRED TWAITS

*v.*

PENNSYLVANIA RAILROAD COMPANY.

[Decided March 21st, 1910.]

1. The court of chancery has jurisdiction of a suit to restrain a defendant in an action at law, begun in a state court and removed by it to the federal court, from relying on a receipt signed by plaintiff as a release of his right of action against defendant.

2. A contract between a master and a servant which absolves the master from responsibility for his own negligence is invalid.

3. A contract between a servant of a railroad and its relief department, which stipulates that the acceptance of benefits from the relief fund for injury or death shall operate as a release of claims for damages against the railroad arising from such injury or death, is not invalid as absolving the railroad from responsibility for its own negligence, because, after an accident, the servant may either sue the railroad or accept the benefits accruing to him by reason of his contract with the relief department.

4. A party to a contract giving alternative rights, who exercises his right of choice and makes an election, is concluded thereby under the doctrine of election at law, though, under the doctrine of election in equity, a mere acceptance does not conclusively evidence election.

5. A servant of a railroad became a member of its relief department under an application reciting that the acceptance of benefits from the relief fund for injury or death should operate as a release of claims for damages against the railroad for such injury or death. After an injury he accepted benefits from the relief fund, and signed a receipt in full for payment on account of the injury. ·There were no misrepresentations or concealments. He had forgotten the provisions of the application at the time of the acceptance of the benefits and the signing of the receipt.— *Held* that, though the doctrine of election of rights applied, the servant

made his election, and he could not be relieved in equity from the effects thereof.

6. Where a party to an unambiguous contract which gives him alternative rights elects one of the rights, he cannot rescind his election merely because he regrets that he did not select the other, or merely because he had forgotten the terms of the contract which he had read and signed, and which he could re-read at the time he made his election.

Heard on bill, answer, replication and proofs in open court.

This is a bill which seeks to restrain the defendant corporation from taking advantage at law of a receipt signed by the complainant and alleged by the defendant to operate as a release by the complainant of his right of action against the defendant corporation.

The facts and issues will sufficiently appear in the opinion.

*Mr. George D. Hendrickson* and *Mr. John M. Enright,* for the complainant.

*Messrs. Vredenburgh, Wall & Carey,* for the defendant.

GARRISON, V. C.

Alfred Twaits, the complainant, entered the employ of the Pennsylvania Railroad Company in March of 1904. On the 15th of March, 1904, he made application to become a member of an organization known as the Pennsylvania Railroad Voluntary Relief Fund. In this application he recited that he had been furnished with a copy of the book of regulations of the relief department, and that he had read those regulations.

One clause of the said application reads as follows:

"And I agree that the acceptance of benefits from the said relief fund for injury or death shall operate as a release of all claims for damages against said company, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance."

On December 3d, 1906, while employed as a fireman on the tug boat "Pennsylvania," he was injured by being struck upon

the head by a bucket lowered into the hold from the deck. His version of the accident is that he was engaged in filling buckets with ashes, which were then hoisted to the deck, where other employes of the company emptied the same and caused the buckets to be lowered into the hold for refilling. Such other employes were accustomed to shout a warning to him that the bucket was about to descend. Upon the occasion of the accident he claims no warning was given, and the bucket was lowered, and because of his having no knowledge of its approach he was struck by it and injured.

The defendant denies any liability to the complainant by reason of the circumstances, claiming that the injury was caused by a fellow-employe. I do not propose to deal with this phase of the case.

The complainant resumed work upon the 6th day of December, 1906. He made application to the relief association for benefits because of this accident, and on December 31st, 1906, received a paper which, after signature by him, read as follows:

"R. D. 65.                                Order Number 42583.
THE PENNSYLVANIA RAILROAD VOLUNTARY RELIEF DEPARTMENT.
*Office of the Superintendent, Philadelphia, Pa.*
Dec. 15, 1906.
Treasurer Pennsylvania Railroad Company,
        Philadelphia, Penna.
Will pay Alfred Twaits Certificate No. 202897, employed as Fireman, by the Pennsylvania Railroad Company One Dollar ($1). Benefits for 2 days from Dec. 4 to 5 inclusive, on account of accident and charge 'Relief Fund Orders.'
Approved for payment:
        (26)            FR. BOSILL.            J. C. VAN RODEN,·
                    For Comptroller.        For Superintendent.
Received Dec. 31st, 1906, One Dollar                (W)
in full for the above order.
Witness—F. W. JONES (Signature).        ALFRED TWAITS.
*Read This*—This receipt must be dated, signed by the person in whose favor the order is drawn, and witnessed by some one knowing the signer to be the proper person. The signature must conform to the name as written in the order. A person unable to sign will make his mark.
This order is payable by any Freight or Passenger Agent of the Pennsylvania R. R. Company's system east of Pittsburgh and Erie, or by any Bank designated as a depository of the Company, when receipted in accordance with instructions below."

The following day he took the paper to a ticket agent of the company and received the sum of one dollar.

He continued in the company's employ for about eleven months after his injury. He afterwards applied for and received sick benefits, but claims that such sickness was not alleged by him to be connected with or consequent upon this injury. On February 14th, 1907, he made application to substitute another beneficiary who should receive any death benefits due by reason of his membership.

In November of 1908 Twaits brought an action to recover damages by reason of the injuries received on December 3d, 1906, as aforesaid, in the Hudson county circuit court. The defendant removed this suit to the circuit court of the United States for the district of New Jersey, and, in March, 1909, filed a plea of general issue. Before the date reached for trial leave was obtained to file a further plea, and the defendant, under such leave, then filed a plea setting up Twaits's membership in the relief association, the agreement in his application, the acceptance of the sum of one dollar and the receipt quoted above, all of which it averred operated as a release of all claims for damages. Thereupon, on November 1st, 1909, Twaits filed this bill, which, broadly speaking, charges that at the time of the acceptance of the money for which he gave the receipt, he had forgotten the provisions of the application that the acceptance of the benefits should operate as a release; that he did not intend to release the company thereby, nor to exercise an election to receive benefits rather than to pursue his claim for damages. He tenders himself ready and willing to return the amount received, and prays that the defendant be compelled to surrender up the receipt for cancellation; and that the effect of said payment and receipt as an act of release may be set aside; and that the defendant may be enjoined from setting up the same as a defence in the action pending at law.

An initial objection raised by the defendant must be dealt with before other features of the case can be considered.

The defendant contends that the court of chancery of New Jersey is without jurisdiction to make any decree in favor of the complainant in this suit because jurisdiction having first been

acquired by the United States circuit court, its jurisdiction is exclusive. That not only comity but public policy forbids the exercise of jurisdictional powers in this court over the proceedings of the federal court, or the interference with suitors in an action pending in the federal court.

I do not agree with the view of the law contended for by the defendant as just expressed in stating his objection to this court's jurisdiction. The proposition of the defendant, it should first be observed, is, in any event, too broadly stated by it. It could hardly be contended, I think, that the matters urged by it should result in a finding of a lack of jurisdiction in this court. The parties being properly before the court, and the subject-matter being equitable in its nature, there cannot properly be said to be any want or lack of jurisdiction. The objection of the party properly stated would be that comity or public policy forbade this court from exercising its jurisdiction under the circumstances; and I shall consider its objection as if made in that form; and I do not find that it is well founded.

The matter has been so fully dealt with, and the cases bearing upon the matter so fully quoted from or cited by the present chancellor in the case of *Bigelow* v. *Old Dominion Copper Mining and Smelting Co., 74 N. J. Eq* (*4 Buch.*) *457,* that I shall not enter into any further discussion of this point. As a result of a very careful consideration given by the court in that case, the principle is enunciated as follows (at *p. 473*) :

"I have not the least doubt or difficulty about the power of a court of equity in one state to restrain its own citizens, or other persons within the control of its process, from the prosecution of suits in other states or in foreign countries. The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be. The court of equity thus appealed to acts *in personam,* and it is immaterial whether the threatened inequitable conduct is to be carried on within or without the limits of the jurisdiction. *1 High Inj.* § *103;*

*Story Eq. Jur. (12th ed.)* §§ *899, 900; Margarum* v. *Moon, 63 N. J. Eq. (18 Dick.) 586,* and cases cited."

Since the gravamen of this bill is that the railroad company, the defendant in the law suit pending in the other jurisdiction, is setting up as a defence a receipt claimed to operate as a release, which, under the circumstances alleged in the bill, it is charged it is inequitable for it to do, I find there is no principle of comity or public policy which forbids this court from passing upon the equitable claims of the complainant and exercising whatever of its jurisdiction it finds proper under the circumstances. My opinion is that this would be so even if the action at law were pending in one of the courts of a sister state; therefore, *a fortiori,* would it be true where the suit at law was pending in New Jersey and was removed by the defendant to the federal court, where, I assume, it could also have removed this equitable action had it seen fit to do so.

The jurisdiction at law is not interfered with by this equitable action. Whatever jurisdiction the circuit court of the United States has power to exercise with respect to the action at law is left unimpaired and is not taken over into this court in this action in any way. The sole thing sought by the complainant here is equitable jurisdiction over the defendant to prevent it from inequitable conduct. I entirely agree with the expression of the learned chancellor, as above expressed, that there is no doubt or difficulty about the right of the exercise of the power of equity of its jurisdiction under such circumstances.

It therefore becomes necessary to investigate the equitable claims of the complainant for the purpose of seeing whether they are well grounded.

Succinctly stated, the theory and argument of the complainant are as follows: The law forbids, and, therefore, treats as invalid a contract between an employer and employe which absolves the employer from responsibility for his own negligence. This contract, entered into between Twaits, an employe of the Pennsylvania Railroad Company, and the relief department, would come under this ban and be invalid were it not for the fact that after an accident the employe is left free either

to sue the company or accept the benefits accruing to him by reason of his membership in the relief department.

Such is the construction placed upon this contract by our own and many other courts: *Beck* v. *Pennsylvania Railroad Co. (Court of Errors and Appeals, 1899), 63 N. J. Law (34 Vr.), 232; Owens* v. *Baltimore and Ohio Railroad Co., 35 Fed. Rep. 715; 1 L. R. A. 75; Otis* v. *Pennsylvania Railroad Co., 71 Fed. Rep. 136; Shaver* v. *Pennsylvania Railroad Co., 71 Fed. Rep. 931; Johnson* v. *Philadelphia and Reading Railroad Co., 163 Pa. 127; 29 Atl. Rep. 854; Ringle* v. *Pennsylvania Railroad Co., 164 Pa. 529; 30 Atl. Rep. 492; Donald* v. *Chicago, &c. (Iowa Sup. Ct.), 33 L. R. A. 492; Pittsburg, C. C. & St. L. R. R. Co.* v. *Moore (Ind. Sup. Ct.), 44 L. R. A. 638; Johnson* v. *C. & S. R. R. Co., 55 S. C. 152; 44 L. R. A. 645; Cox* v. *Pittsburg, C. C. & St. L. R. R. Co. (Ohio Sup. Ct.), 35 L. R. A. 510.*

The complainant thereupon continues that, since the thing which saves the contract from being invalid is the election left to the employe, he is not bound by the acceptance of benefits and the signature to the receipt, if he proves that he did not make an election; that the mere acceptance of the benefits is not to be taken as evidence of an election. He cites cases—most, if not all, of them arising out of testamentary dispositions—in which the acceptance by a beneficiary of money or property was not held to conclusively bar such beneficiary from surrendering the same and taking what he was otherwise entitled to, in cases where he was entitled to one of such things but not to both—the doctrine of election being involved in such cases, and the courts having held that the mere acceptance will not be held to conclusively evidence election in such instances as they find that the party did not actually elect. *Young* v. *Young (Vice-Chancellor Pitney, 1893), 51 N. J. Eq. (6 Dick.) 491; Parker* v. *Seeley (Vice-Chancellor Pitney, 1897), 56 N. J. Eq. (11 Dick.) 110; Hill* v. *Hill (Court of Errors and Appeals, 1898), 62 N. J. Law (33 Vr.) 442.*

This doctrine is the doctrine of election in equity, and by reference to its definitions and the cases under it, it will be found inapplicable to the case in hand. See *Bouv. L. Dict.*

(*Rawle's ed.*) *vol. 1 p. 647; 7 Am. & Eng. Encycl. L. (2d ed.) 56, tit. "Equity Election."*

There is, however, a doctrine of election at law in respect to contracts which, either by definition or the extension of the doctrine, may be properly said to apply. See *Bouv. L. Dict., supra, p. 646; Smith* v. *Sanborn, 11 Johns. Rep. 59; 5 L. Ed. 60; Dinsmore* v. *Duncan, 57 N. Y. 573* (at *p. 579 et seq.*) ; *12 L. Ed. 361* (at *p. 363*).

Broadly stated, the law in respect to alternative rights or provisions under contracts is that the party having the right of choice, when he has once elected, is concluded thereby. (See authorities just cited.)

The complainant's claim here is that he did not actually elect. He bases the claim upon his oath that he forgot the terms of the contract. There is no allegation, charge or proof that anything was concealed, misrepresented or withheld from him. At the time that he became a member of the relief department the contract became effective and binding upon the parties, and the complainant over his own signature agreed that if he accepted the benefits due him by reason of an accident it should operate as a release of any other claim for damages against the company on account of such accident. He does not now contend that the acceptance of the benefits does not so operate as to bar his claim for damages. But he does contend that he has the right to avoid the consequences of acceptance by rescinding his own action in that respect, and giving back the amount received for benefits, and thus be left free to proceed upon a claim for damages.

He, of course, does not stand upon any charge of mutual mistake; and, although he argues that he has the right to rescind by reason of a mistake upon his part, I cannot see that there is any allegation, charge or proof of what should properly be termed a mistake upon his part. He contends that the unilateral mistake was with respect to the effect of accepting the benefits, but I think this cannot properly be termed a mistake upon his part in the sense in which the word "mistake" is used in equity. If he remembered the terms of the contract, or had them before him at the time he received the benefits, it does not seem possible that it would be correct to say that his conduct

was the result of any mistake upon his part. He must be dealt with as a rational human being, and the language of the contract is so utterly unambiguous that no rational human being could mistake the effect upon his claim for damages if he accepted the benefits, the provision of the contract in this respect being entirely clear and unmistakable. The only possible use of the word "mistake" in respect to the complainant's conduct would be to say that he made a mistake in not re-reading his contract before acting under it.

The real question, therefore, as I view it, is whether a man who is a party to a perfectly clear and unambiguous contract, can act under it and afterwards claim the right to rescind his action and not be bound by it, because there were two alternatives open to him at the time of his action and he now regrets that he did not choose the other one. To this question it seems to me there can be but one answer, and that is that he may not. Every principle which goes to make up the totality which we call the law of contracts would be violated if the contrary were held. I need hardly repeat what I have above pointed out, that there is not in this case the slightest suggestion of any fraud, misrepresentation or imposition of any sort. The complainant, by the terms of his contract, was left absolutely free to exercise every right that he possessed. The contract left him free either to accept the benefits and thereby release the railroad company, or not to apply for benefits and be unrestrained in suing for and recovering any damages to which he might be entitled. The only reason why he cannot pursue the latter course now is because at a time when he was entirely free to choose, and had all the facts at his disposal, he chose to accept the benefits.

The way in which the complainant seeks to avoid the effect of the contract and of his conduct is by alleging and testifying that he forgot what the contract was, and, therefore, when he made application for and accepted the benefits he did not know what the effect would be.

It has been held that, where a man unrestrainedly enters into a contract in writing, he is bound by its terms even if he did not read it or cause it to be read to him. *Fivey* v. *Pennsylvania Railroad Co. (Court of Errors and Appeals, 1902), 67 N. J.*

*Law (38 Vr.) 627; Zdancewicz* v. *Burlington County Traction Co. (New Jersey Supreme Court, 1908), 71 Atl. Rep. 123; Vellekoup* v. *Fullerton Co. (New Jersey Supreme Court, 1909), 74 Atl. Rep. 793.*

This complainant is not even in so favorable a position as one who ineffectually alleges and proves that he did not read or have read to him a contract that he signed, because this complainant did read the contract and certified that he had read it, and at all times had it in his power to obtain and re-read it.

Unless, therefore, this court is prepared to decide that a man is not bound by a perfectly clear and unambiguous contract which he has read and signed, if he will swear that he has forgotten its terms, it cannot properly decide with the complainant in this suit.

I am not prepared to find that such is the law.

Assuming, therefore, in favor of the complainant that the doctrine of election of rights applies to his case, I do not find that he has proven that he did not make his election, and that he should be relieved from the effects thereof. The contract was written, was clear, and without the slightest ambiguity. The complainant had read it and signed it and acted under it. He had made his application for benefits and received them, and he cannot now avoid the effect of such conduct and of his contract by testifying that he had forgotten what his contract was.

I will advise a decree dismissing the bill, with costs.