Complainant's bill seeks the rescission and cancellation of a policy of insurance alleged to have been obtained from it *Page 431 
as a result of false statements and misrepresentations on the part of the insured with respect to certain material facts.
The policy in question was issued on January 1st, 1940, on the life of Jesse W. Coddington in faith of his written application therefor and designated as the beneficiary thereunder his wife, Enez O. Coddington, the defendant herein. The application bears date of December 13th, 1939, and, in answer to certain questions therein asked of the insured, records, among other things, (a) that he was never sick; (b) that he never changed his residence or occupation or left his work for more than one month on account of his health; (c) that he was never an inmate of a hospital, sanatorium, asylum or cure, whether for observation, examination or treatment; (d) that he had lost no time from work through illness during the past five years; (e) that he had never had or suffered from any of a number of specified diseases or ailments, among which was insanity; (f) that he had never had any illness or occupational diseases; and (g) that he had not consulted any physicians, healers or other practitioners, nor had he been treated in any clinics or hospitals during the past five years.
The questions calling for this information obviously related to matters that were, or ought to have been, within the personal knowledge of the insured, and his answers thereto, as returned in said application, were complete, unqualified and unequivocal. That these answers were untrue clearly appears, however, from the uncontradicted and undisputed proofs which demonstrate beyond peradventure (a) that the insured was sick from October 22d 1934, up until around the middle of April, 1935; (b) that he, for at least that period of time, had left his work because of his then illness; (c) that he was an inmate of a hospital, or asylum, having been committed on October 22d 1934, by the Burlington County Court of Common Pleas, on the application of his father, to the New Jersey State Hospital at Trenton, where he was actually confined and treated from the date of his entry up until April 16th, 1935, the date of his parole, for a serious form of insanity known as dementia praecox, hyperphrenic type, and from which institution he was not discharged until April *Page 432 
26th, 1936; (d) that he had lost time from his work during the five years preceding the date of his said application; (e) that he had actually suffered from insanity; and (f) that he had in fact been treated in the New Jersey State Hospital at Trenton during the said period which, of course, was within five years preceding the date of his said application.
All of the hereinabove mentioned misstatements misrepresentations and concealments made by the insured in reply to specific questions asked of him in his said application, were material, Duff v. Prudential Insurance Co., 90 N.J. Law 646;101 Atl. Rep. 311, and unquestionably were relied on by complainant in issuing the policy in question. The defendant, however, seeks to evade responsibility for their making and to escape the consequences thereof by claiming in effect that the answers as given by the insured to complainant's medical examiner were true in fact, but that the latter recorded them otherwise in said application; and hence contends that the misstatements, misrepresentations and concealments thus recorded were, in truth and fact, not those of the insured but rather those of the medical examiner who was the agent of complainant.
This contention is, however, predicated upon nothing more than defendant's own uncorroborated testimony that she was present during the medical examination and interrogation of her husband by complainant's medical examiner; that she heard the latter ask her husband all of the questions contained in Part B of said application, dealing with his medical history, and heard her husband tell him of his confinement in the New Jersey State Hospital at Trenton for "a nervous breakdown" — not because of insanity, as was the fact — and even gave him the date of his admission therein and discharge therefrom, but that the medical examiner told him that, since it happened so long ago, it would not be necessary to write that down in the application and that he, therefore, would write down the answer "No" to the question: "Have you ever been an inmate of a hospital, sanatorium, asylum or cure, whether for observation, examination or treatment? If yes, give date, duration, nature of ailment and name of institution." This, however, was unqualifiedly denied by the *Page 433 
medical examiner who testified that the insured never informed him of his confinement in or treatment at that or any other institution; that he never said any such thing to the insured as she sought to attribute to him and that she, in fact, was not even present during his examination or interrogation of the insured. At this point, the fact should not be overlooked that, although the defendant claims to have heard the medical examiner ask her husband all of the hereinbefore alluded to questions, she did not, however, testify or even intimate that her husband answered the other of said questions in a manner other than as shown by the answers thereto which the medical examiner wrote down in said application, and which answers, as hereinbefore shown, also were and are wholly untrue. Her testimony, as contrasted with the frank, convincing and credible character of the testimony given by the medical examiner, is, to say the least, entirely unsatisfactory, unconvincing and incredible.
But even assuming for the purpose of this discussion that the answers were recorded by the medical examiner in a manner other than as they were given to him by the insured, although I find the contrary to be the fact, nevertheless the defendant could not by reason thereof escape the legal consequences of those untrue answers returned in the insured's said application, Fish v.Metropolitan Life Insurance Co., 75 N.J. Law 822;69 Atl. Rep. 176; Silcox v. Grand Fraternity, 79 N.J. Law 502;76 Atl. Rep. 1018, because the rule appears to be well settled that where, as here, an application for a policy of life insurance contains a clear limitation upon the authority of the insurer's agents to waive or vary any answers, required by the application, any untrue answers so returned and signed by the insured, even though written in by the insurer's own medical examiner and agent, will, if material to the risk, constitute grounds for voiding the policy obtained upon the strength thereof. This is in consonance with the rule enunciated by our Court of Errors and Appeals in the case of Dimick v. Metropolitan Life Insurance Co.,69 N.J. Law 384; 55 Atl. Rep. 291, and in which Mr. Justice Pitney aptly said, "the company was certainly at liberty to limit the powers and authority of its own agents, and third *Page 434 
parties dealing with the agents, with express notice of the limitations thus imposed, cannot bind the principal by any act done by the agents in excess of the bounds of their authority.Catoir v. American Life Insurance Co., 4 Vr. 487; MetropolitanLife Insurance Co. v. McGrath, 23 Id. 358; McClave v. MutualReserve Fund Life Association, 26 Id. 186; Dwelling HouseInsurance Co. v. Snyder, 30 Id. 18."
In the lawful exercise of its hereinabove stated right and power, complainant, in the instant case, limited and circumscribed the power and authority of its medical examiner and other agents, by plainly and clearly stating and embodying in the very application, which, as therein specified, was to "form the basis of the contract of insurance, if one be issued," the following provisions:
"It is understood and agreed that: 1. The foregoing statements and answers are correct and wholly true, and, together with the answers to questions on Part B hereof, shall form the basis of the contract of insurance, if one be issued.
2. No agent, medical examiner or any, other person, except the officers of the company, have power on behalf of the company; (a) to make, modify or discharge any contract of insurance, or (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder.
3. No statement made to or by, and no knowledge on the part of any agent, medical examiner or any other person as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the Company unless stated in either Part A or Part B of this application."
By these provisions, the insured was, in the words of Dimick
v. Metropolitan Life Insurance Co., supra, "plainly given to understand that if he desired to use that instrument as the basis of a contract of insurance with this company, he must himself assume sole responsibility for the truth and correctness of the replies made to the questions therein contained," and that the medical examiner, even though he were the agent of complainant, was "without power to bind the company by any modification or alteration of the declarations made therein, such power being expressly denied to [him]; and that any false, incorrect or untrue answer, or any suppression *Page 435 
or concealment of facts in any of the answers would render the policy null and void." With full knowledge of this and in the face thereof, the insured in the instant case also unqualifiedly certified that all of the answers given by him and as they were recorded in said application were absolutely true and correct. This he did in and by the following certificate, subjoined to and incorporated in said application: "I hereby certify that (1) I have read the answers to the questions in Part B and Part A hereof, before signing, (2) they have been correctly written as given by me, (3) they are full, true and complete, and (4) there are no exceptions to any such answers other than as stated herein," and which certificate was signed by him.
In the absence of any proof that the affixation of the insured's signature to that certification or his said application was procured through fraud, misrepresentation or imposition, of which there is here neither any evidence nor even any suggestion or intimation, the insured is conclusively presumed to have read said document and to be bound thereby. Fivey v. ThePennsylvania Railroad Co., 67 N.J. Law 627; 52 Atl Rep. 472;Zdancewicz v. Burlington County Traction Co., 77 N.J. Law 10;71 Atl. Rep. 123; Twaits v. Pennsylvania Railroad Co., 77 N.J. Eq. 103; 75 Atl. Rep. 1010.
Defendant further contends that, inasmuch as complainant has its own medical examiner examine the insured before issuing the policy, it must not have, therefore, relied on the insured's answers as recorded in his said application. This contention, aside from being without merit, is contrary to the undisputed testimony of complainant's agent, who testified that he was charged with the duty of approving or rejecting applications for polices of insurance. This agent testified, without contradiction, that he approved the application and that as a result thereof the policy in question was issued; that his approval was based primarily upon the negative answers contained in the application with respect to the insured's medical history, and that if it had been disclosed in said application that the insured had been treated in the New Jersey State Hospital at Trenton from October 22d 1934, to around the middle of April, 1935, for dementia *Page 436 
praecox, hyperphrenic type, he would have rejected and not approved the application in question. Unquestionably, the knowledge or ignorance of this, as well as of the many other misstated facts in said application, would have naturally and reasonably influenced complainant's judgment in entering into the contract of insurance at all in estimating the risk or in determining the premiums, and hence are material to the risk which it here undertook. Consequently, complainant may avoid the here involved policy of life insurance which was obtained upon the strength of the insured's application containing untrue answers in response to the questions therein asked concerning his medical history, notwithstanding the fact that it had its own medical examiner examine the insured before issuing the policy.
Defendant's final contention is, in effect, that inasmuch as there is no causal relationship between the insured's misrepresentations and the cause of his death, complainant is not entitled to the relief which it here seeks. But it is now well settled that the mere absence of a causal relationship between the insured's misrepresentations as to a material fact and the cause of his death will not defeat the insurer's right to a rescission or cancellation of its policy of life insurance obtained as a result of said misrepresentation. Quite apropos, indeed, is the following language of our Court of Errors and Appeals in Dimick v. Metropolitan Life Insurance Co., supra
(italics mine): "And so with respect to the inquiry whether the applicant had ever been an inmate of any asylum or hospital. It may often be the case that this fact itself has no bearing upon the expectancy of life of the applicant. In the present case it appears that Dimick's treatment in the hospital was for the results of a not very serious accident, and that this accidenthad nothing to do with producing his death." Were the rule otherwise, it would result in the automatic deferment of the insurer's right to cancel or rescind its policy obtained through fraud, misrepresentation, concealment or imposition on the part of the insured with respect to a material fact until after the determination of the question as to whether or not a causal relationship existed between said fraud, misrepresentation, concealment or imposition and the *Page 437 
death of the insured, which event, however, might not occur until after the expiration of the contestability period prescribed in the policy itself, and thereby, of necessity, result in the abrogation or denial of the insurer's vested right, under the policy itself, to, at any time within the prescribed contestability period, cancel or rescind its policy because of such conduct on the part of the insured; and this irrespective of the fact whether the insured be then still living or not.Prudential Insurance Co. v. Connallon, 108 N.J. Eq. 316;154 Atl. Rep. 729. Hence, the mere absence of a causal relationship between the insured's misrepresentation as to a material fact and the cause of his death will not defeat the insurer's right to a rescission or cancellation of its policy of life insurance obtained as a result of said misrepresentation.
In accordance with the views herein expressed, complainant is entitled to a decree for the relief here sought.