MICHAEL DUNNE, PLAINTIFF, DEFENDANT IN ERROR, v. JERSEY CITY GALVANIZING COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted December 12, 1905—Decided November 19, 1906.

1. A servant has the right to take it for granted that his master has performed his duty by the exercise of that reasonable care for the servant's safety which the law requires, until the servant is warned or notified of danger, or until the danger becomes so obvious that a reasonably prudent servant, under the circumstances, would observe it.
2. In order to entitle a party to insist that a proper instruction requested by him shall be given, a timely presentation of such request should be made to the court at or before the close of the evidence, and before the beginning of the argument.
3. To entitle a party presenting requests to charge, after the court has concluded its charge, to have such requests considered and charged, or refused, it should appear that the requests presented have been made necessary by something the court has already charged or omitted to charge.

On error to the Hudson Circuit Court.

For the plaintiff in error, *Robert L. Lawrence.*

For the defendant in error, *McEwan & McEwan.*

The opinion of the court was delivered by

FORT, J. The plaintiff was a servant of the defendant. He was employed as a laborer to clean castings, load trucks and help all around the shop wherever he was sent.

The business of the defendant was galvanizing leaders, stove pipe, sheetiron piping, fittings and the like. For this purpose there were in the factory two tanks or kettles, constructed of sheetiron, encased in brick, and about twenty feet in length and four feet in width and three feet in depth. These tanks were, when in use, filled with a molten metal or liquid, and the pipes and fittings were given a bath in the tanks to galvanize them.

The plaintiff was not employed to work at the tanks or to do galvanizing.

It was proven that the putting of water or wet fittings in these tanks would cause the metal to explode or spurt, and thus fly out of the tank a distance of from four to ten feet, and even fifteen, at times.

It also appeared that when the workmen at the tanks were galvanizing pipes they placed on the top edge of the tanks a sheetiron casing, called in the proof "a target," to prevent the flying particles from injuring anyone. These targets were furnished by the master for that purpose.

It was also in proof that when they were galvanizing short pieces these targets were not used—in fact, could not be used, as the pieces were placed along the top of the tanks and put into the liquid with tongs. No protection was therefore provided while galvanizing short work.

The plaintiff had worked in factories similar to this before, and was familiar, by observation only, with the fact that if wet substances were placed in the molten metal in the tanks

the metal would spurt and fly out. But the proof in this case was that he had never seen the metal fly out in this factory, and that he was not informed that any damp parts were placed in the tank, he supposing that all the parts that were galvanized were dry, having seen none used in this shop except such as came from the drying-room.

The plaintiff had not worked within a distance nearer than forty feet of the tanks except for about twenty minutes·on the Saturday before he was injured, when he was for that short time wheeling iron pieces to the tank to be given the galvanizing bath. On the following Monday he was again put at the same work, and there was a spurt from the tank when he wheeled the first load, and he was hit in the eye and lost the sight of it. He was about ten feet from the tank at the time.

The dangers of the work were not explained to the plaintiff, nor was he given any warning of the probable danger of explosions from the use of wet metal while working around the tanks. He was not told, and there was nothing to indicate, that damp metal was put in the tanks. He had never seen, while working there for two weeks, any explosion or spurting of the metal from the tanks.

Under the proof, we think it was a question for the jury whether the risk of flying metal, caused by immersing iron pieces which were wet, was one of the risks incident to the employment, or whether, under the proof, the probable injury from such flying metal thus caused was a risk that was obvious.

The case is here upon three grounds:

1. Refusal to nonsuit.

2. Refusal to direct a verdict.

3. Refusal to consider certain requests to charge.

As to the first two, the case was clearly one of fact for the jury, and the court rightly refused to grant either of these.

A servant is entitled to assume, in the absence of notice to the contrary, that the master has exercised reasonable care and skill to provide for the safety of the place in which he

has put the servant to work. *Carroll* v. *Tidewater Oil Co.,* 38 *Vroom* 679.

The plaintiff had the right to assume, without notice to the contrary, that the master had taken reasonable care to ascertain that the place where he put him to work was free from latent dangers, or that, if such dangers existed, and were known to the master, he would have warned him of them. The proof is clear that such dangers did exist, and there is no claim that they were not known to the master. If, then, the jury were satisfied that the danger was a latent one, and that the master knew it, and that the plaintiff was injured because of this fact, and that he had not been warned of the danger, the plaintiff was entitled to recover.

Mr. Justice Pitney, in Smith *v.* Eric Railroad Company, speaking for this court, says: "A servant has the right to take it for granted that his master has performed his duty, by the exercise of that reasonable care for the servant's safety which the law requires, until the servant is warned or notified of danger, or until the danger becomes so obvious that a reasonably prudent servant, under the circumstances, would observe it." *Smith* v. *Erie Railroad Co.,* 38 *Vroom* 636, 645.

In *Western Union Telegraph Co.* v. *McMullen,* 29 *Vroom* 155, the opinion of Mr. Justice Van Syckel will be found, on principle, to support the view taken by us in this opinion. All questions as to the reasonable safety of the place where the plaintiff was put to work—as to the risks incident to the employment, as to latent dangers, and also as to the assumption by the plaintiff of obvious risks—were fully and correctly left to the jury in the charge of the trial judge. Under the proof they were all jury questions.

The only remaining question relates to the refusal of the trial court to either examine or charge certain requests.

These requests were handed to the trial judge after he had concluded his charge, and they were not alleged to be requests which the defendant deemed to be necessary because of something which the trial judge had said or omitted to say in his charge.

The examination or charging of requests presented, under such circumstances, is a matter resting in the discretion of the trial judge, and a refusal to consider or charge them will not be reversed on error.

Mr. Blashfield says: "In order to entitle a party to insist that a proper instruction requested by him shall be given, his request must be presented to the court in apt and proper time. It is a general rule that requests not made at the proper time may be refused." *Blash. Inst. Jur.*, § 134, *note* 33, and cases cited. The same learned author states that the rule prevailing in most jurisdictions requires the request to be made at or before the close of the evidence and before the beginning of the argument, and gives a large number of decisions in many states sustaining this statement. They will be found at the above reference, running from sections 134 to 136, both inclusive.

To entitle a party presenting requests to charge, after the court has concluded its charge, to have such requests considered and charged or refused, it should appear that the requests presented have been made necessary by something the court has already charged or omitted to charge.

The errors assigned being without substance, the judgment of the Hudson County Circuit Court is affirmed.

*For affirmance*—THE CHANCELLOR, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, DILL.    9.

*For reversal*—THE CHIEF JUSTICE, GARRISON, GARRETSON, SWAYZE, REED, GRAY.    6.