JOSEPHINE CECCOMANCINO, BY HER NEXT FRIEND, MARY CECCOMANCINO; ANNA CECCOMANCINO, BY HER NEXT FRIEND, MARY CECCOMANCINO; MARY CECCOMANCINO, INDIVIDUALLY, AND JOSEPHINE NOBLE, PLAINTIFFS-RESPONDENTS, v. ANTHONY D'ONOFRIO, SAM KOSHER, SAM BERGER AND DORA BERGER, DEFENDANTS-APPELLANTS.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant Sam Kosher, *Mark Townsend, Jr.*

For the respondents, *O'Neill & Broderick.*

The opinion of the court was delivered by

WELLS, J.   This is an appeal by the defendant Sam Kosher, from the judgment entered in the Supreme Court, Morris County Circuit, on verdicts rendered in favor of the plaintiffs, aggregating $1,781 against the defendants Sam Kosher and Sam Berger.

The actions were brought by the plaintiffs-respondents (hereinafter referred to as the plaintiffs) to recover damages for the personal injuries sustained by them as a result of a collision between a Ford sedan, in which they were riding, and the automobiles of the defendants Sam Kosher and Sam Berger.

There were four defendants, Anthony D'Onofrio, in whose car the plaintiffs were riding, Sam Kosher, the appellant, who was the driver of one of the cars figuring in the accident,

Sam Berger, the driver, and Dora Berger, the owner of the third car.

A nonsuit was entered as to the defendant Dora Berger and the case was apparently not pressed against the defendant D'Onofrio. Only Sam Kosher appeals.

The accident occurred about midnight, July 17th, 1932, between Mount Freedom and Morristown, New Jersey, on the "Mount Freedom road," an improved highway sixteen feet in width. The plaintiffs were returning to their home in Dover, New Jersey, from a trip to New York and Coney Island and were proceeding in a Ford sedan, owned and operated by D'Onofrio, in a northerly direction toward Mount Freedom. The defendant Sam Berger and appellant Sam Kosher, were coming from Mount Freedom to their homes in Union City, New Jersey, and proceeding in separate automobiles, Kosher following Berger, in a southerly direction, when the automobile of Berger came into contact with D'Onofrio's Ford and immediately thereafter a second collision occurred between the car of appellant and the Ford of D'Onofrio, resulting in the injuries for which the judgments appealed from were awarded.

The appellant sets down three grounds of appeal.

First that the court erred in not granting at the conclusion of the plaintiffs' case, the appellant's motion for a nonsuit, and second, because the court erred in not granting at the conclusion of the whole case, the appellant's motion for a direction of a verdict. Both motions were based on the ground that there was no evidence of negligence on the part of the appellant. As to these two points, which may be dealt with together, there was testimony from which the jury could find that the car in which the plaintiffs were riding was traveling on its right side of the road up a long hill slowly—in first or second gear—and that D'Onofrio, the driver, observed Berger's car about three hundred feet away, coming toward him at a fast rate of speed, as was indicated by its bobbing headlights, and when the Berger car reached a point about twenty-five feet away from the D'Onofrio car it swerved to its left side of the road and struck the D'Onofrio car a glancing blow,

turning it slightly to the left, and almost immediately there-
after, and while the D'Onofrio car was still on its right side
of the highway, appellant's car, closely following the Berger
car, crashed into the D'Onofrio car with such violence as to
turn it over three times; that the Berger car continued after
the impact down the road one hundred to one hundred and
fifty feet and appellant's car seventy-five to ninety feet, while
the D'Onofrio car stopped almost at the place of the accident
and still on its right side of the roadway.

The appellant, by way of defense, adduced testimony tend-
ing to show that he was driving his car along the Mount Free-
dom road, a distance of about forty to fifty feet behind the
car driven by his friend, Sam Berger, at a speed of about
twenty-twenty-five miles an hour and on the right side of
the road; that he saw the car in which the plaintiffs were
riding coming towards him, in front of Berger's car, but
where on the highway he did not know; that the car in which
the plaintiffs were riding clipped Berger's car, which was on
its right side of the road, and then before appellant knew
anything, felt himself toppling over; but at the time of the
collision with the car in which plaintiffs were riding, appel-
lant was on the right side of the road; that the accident
happened so quickly he didn't have an opportunity to apply
his brakes, although he could stop his car within a distance
of fifteen feet and in an emergency, less than that; that the
D'Onofrio car went one hundred to one hundred and forty, or
one hundred and fifty feet up the hill after the accident, be-
fore it stopped. There was conflicting testimony as to the
skid marks—by which car made and what they indicated.

Appellant in his attempt to escape the charge of negligence
made against him by the plaintiffs and place the responsibility
for the accident solely on the negligence of D'Onofrio, puts
great stress on the admission of D'Onofrio that he did not
see appellant's car on the highway until after Berger's car
and D'Onofrio's car had come in contact, although he ad-
mitted that he could see for some distance in the direction
from which appellant's car came on the night of the accident.

Assuming that negligence on the part of D'Onofrio might

be inferred from this testimonoy—the trial court was confronted with the fact that the inference also could be legitimately made that the reason D'Onofrio and the plaintiff Mary Ceccomancino did not see appellant's car was that it was following too closely behind the Berger car to be seen, and that under the circumstances of the case it was the province of the jury and not the judge to determine what inferences should be drawn.

Appellant insists all that the evidence shows is that an accident occurred—but that plaintiffs failed to prove by the preponderance of the evidence that appellant was negligent and that it was this negligence which was the cause of the accident.

Appellant cites *Parave* v. *Public Service Interstate Transportation,* 109 *N. J. L.* 155; 160 *Atl. Rep.* 375, to the effect that as a general rule the mere showing of an accident causing the injuries sued for is not alone sufficient to authorize an inference of negligence; that negligence is a fact which must be shown. It will not be presumed. We are in accord with this.

The same case, however, citing *Podolsky* v. *Sautter,* 102 *N. J. L.* 598, also holds "before the trial judge can take away from the jury the question whether or not the negligence of the defendant is the proximate cause of the injury and determine that question himself, the facts must not only be undisputed, but the inference to be drawn from those facts must be such that fair-minded men ought not to differ about them." And also that a motion for a nonsuit or to direct a verdict for the defendant, based upon the evidence to establish a cause of action, admits the truth of the plaintiff's evidence and of every inference of fact which can be legitimately drawn therefrom, but denies its sufficiency in law.

The jury was justified in finding from the evidence presented on behalf of the plaintiffs that the turning in by the appellant from his right half of the highway to the left of the center thereof was the proximate cause of the accident.

Section 5, article 8 of chapter 281 (*Pamph. L.* 1928, *p.* 733), known as the "Traffic act" provides that—

"Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway, * * * unless it is impracticable to travel on such side of the highway, and except when overtaking and passing other vehicles," &c.

There was evidence in the case that there was ample room on the highway for a compliance with this act and that the appellant Kosher disobeyed this provision of the Traffic act, and that had he continued to drive his car upon the right half of the highway, the accident would not have occurred.

This court, in a recent decision rendered in the case of *Reeves* v. *Prosser,* 109 *N. J. L.* 485, citing *Winch* v. *Johnson,* 92 *Id.* 219, held "that the fact that the driver of an automobile failed to observe the provisions of the Traffic act does not *per se* present the basis for the direction of a verdict against the defendant, such fact being but one factor in the situation, which considered as a whole, presents a jury question as to defendant's negligence under all the circumstances."

We think, therefore, that the question of the negligence of appellant was properly submitted by the trial court to the jury.

The third ground of appeal is that "the court erred in refusing to charge this request: 'I ask your honor to charge with respect to the joint enterprise existing between the plaintiffs and the operator of their car.' "

We think this request was properly refused for several reasons. In the first place the request was general and too broad. It applied to all the plaintiffs. Manifestly there could be no joint enterprise between the operator of the car and the nine and eleven-year-old infants.

"A party wishing an instruction given must formulate it, and state definitely and unequivocally what he desires to be given." *Klie* v. *Holstein,* 98 *N. J. L.* 473; 120 *Atl. Rep.* 16.

In the second place, the request was not submitted in writing but was submitted orally to the trial judge after he had finished his charge.

This court held in *Dunne* v. *Jersey City Galvanizing Co.,* 73 *N. J. L.* 586; 64 *Atl. Rep.* 1076, cited in *Carmany* v. *West*

*Jersey and Seashore Railroad Co.,* 78 *N. J. L.* 552; 74 *Atl. Rep.* 656:

"In order to entitle a party to insist that a proper instruction requested by him shall be given, a timely presentation of such request should be made to the court at or before the close of the evidence and before the beginning of the argument.

"To entitle a party presenting requests to charge after the court has concluded its charge, to have such requests considered and charged or refused, it should appear that the requests presented have been made necessary by something the court has already charged or omitted to charge."

The request refused in the instant case was not made necessary by something the court had charged or omitted to charge.

The court had specifically charged that the negligence on the part of D'Onofrio, if there was any, was not attributable to the plaintiffs, that "they were passengers having no control or authority over his car; they did not direct its operation, and it could not make any difference whether they rode as invitees or licensees. The negligence of the driver, if there was any, would not be their fault and they would not be responsible for it."

In other words the court told the jury that the doctrine of joint enterprise was not applicable. While the attorney for the appellant excepted to that part of the court's charge which says "negligence of the driver, D'Onofrio, would not be attributable to the passengers," yet this is not assigned as a ground of appeal nor is it urged here.

Furthermore, we think the request was properly refused because the evidence did not tend to show a joint enterprise —and a request to charge must be based upon the evidence adduced in the cause. *O'Connor* v. *Coyne,* 103 *N. J. L.* 410; *Illis* v. *Oberle,* 106 *Id.* 244; *Bennett* v. *Eagleke,* 107 *Id.* 461.

The only testimony as to the purposes and object of the trip was that plaintiffs were taken to New York by D'Onofrio in his car to attend a feast on One Hundred and Sixteenth street and that the plaintiff, Mary Ceccomancino suggested going; that from One Hundred and Sixteenth street they

went to Coney Island and on the way home the accident occurred.

"To constitute a common or joint enterprise within the rules as to imputed negligence, there should be a joint interest or community of interest in the object or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." *McGinley et al.* v. *Winters*, 110 *N. J. L.* 540; 166 *Atl. Rep.* 166.

There was no evidence to show that any of the plaintiffs had an equal right to direct and govern the movements and conduct of D'Onofrio or that they had any voice or right to be heard in the control and management of his car.

The mere fact that the plaintiffs and D'Onofrio were taking the trip together does not make each chargeable with the negligence of the other, nor does the mere fact that they had certain plans in common. "The theory of the law which makes each person engaged in a common purpose at the time of an injury resulting from the negligence of some outside person responsible for the negligence of any one of his associates contributing to the injury, is that each was the agent of the other and was responsible for the consequences resulting from the acts of the other or any of them." *McGinley* v. *Winters, supra.*

There was no evidence produced in the instant case requiring the trial court to charge that the doctrine of joint enterprise was applicable.

We find no merit in the third ground of appeal.

We are of the opinion that the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.