PATRICK FIVEY, PLAINTIFF IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued March 10, 1902—Decided June 16, 1902.

1. Where a party attaches his signature to a contract, otherwise valid, a conclusive presumption is created, except as against fraud, that the signer read, understood and assented to its terms.
2. Where a defence set up to an action upon a written contract is that the signature thereto has been obtained by fraud, the burden is upon him who raises such a defence to establish the alleged fraud by clear and satisfactory proof. The presumption of the law is in favor of innocence and fraud is not to be assumed on doubtful evidence.
3. The plaintiff sued a railroad company for accidental injuries sustained while in its employ. The defence was a release arising by the acceptance of benefits from a relief fund established by the company of which the plaintiff had become a member. The plaintiff replied alleging fraud, the principal facts alleged being that when he began to read the application the medical examiner told him to sign it, saying it was only a matter of form and was immaterial; that the association was a benevolent one belonging to the employes and sustained by deductions from the wages of the

members each month, but failing to state that the acceptance of benefits for injuries would operate as a release; but it also appearing that the plaintiff knew that he was signing a contract and that he could read and write, and that the agreement in question was printed in plain, legible type and that he was furnished with a book containing a copy of his application and agreement and of the regulations of the relief fund, which he ,had in his possession over two months before the accident, at the close of the evidence a verdict was directed for the defendant. *Held*, on review, that the proof of fraud failed and that the direction was not erroneous.

On error to the Supreme Court.

For the plaintiff in error, *Thomas P. Wickes* (of the New York bar).

For the defendant in error, *James B. Vredenburgh.*

The opinion of the court was delivered by

HENDRICKSON, J.    The plaintiff brought suit against the defendant company to recover damages for an injury resulting from the alleged negligence of the company. The defence was a denial of the negligence and a release. The case was tried at the Hudson Circuit, and resulted in a direction of the verdict in favor of the defendant. Exception was taken to this action of the trial judge, and error has been duly assigned thereon.

The plaintiff's injury happened on March 14th, 1899, in the Harsimus freight-yard of the defendant at Jersey City, while in its employ as a brakeman. A freight train of open cars, loaded with lumber, was engaged in drilling, cutting off a car at a time and, by means of switches, locating them upon the tracks at the various piers of the company on the river. The plaintiff was in charge of one of these cars just "cut off" from the train, and was standing at its easterly end, regulating its movements by means of a hand-brake, which consisted of a wheel on top of an upright rod, with a "ratchet" at the foot, into which a "dog" would fall at each rotary movement of the brake and hold it in place until moved again.

While the car was moving eastwardly toward the dock a switch was misplaced, whereby the car was being carried upon the wrong track and was about to collide with an engine standing there. The plaintiff's story is that he at once applied the brake, but ineffectually, because it was out of order, and, from the force of the impact of the collision, the lumber in the car was thrown against him, causing his injuries. He says the defect in the brake was that the rod was bent, causing the "dog" to fall below the ratchet, leaving him to hold the brake in place by main strength. It will be perceived that the charge of negligence involved, as questions of fact, the alleged defect in the brake, and the failure of the company's agents to discover it by the exercise of reasonable care, and whether the defect had existed for such a length of time as to afford the company a reasonable opportunity to discover it.

The plaintiff's evidence upon these questions was traversed by that of the defendant, but since the judge's direction was confined to the proof upon the subject of the alleged release, we will not consider, for the present at least, the question of the failure to prove negligence, which was one of the grounds of the motion to direct the verdict. In addition to other defences, the defendant pleaded and offered proof in support of the following facts, to wit: That the plaintiff, as an employe of the defendant, some time prior to the accident, had applied for membership in the relief fund managed by the defendant company, as alleged, for the protection and benefit of such of its employes as might desire to avail themselves of its provisions; that one of the agreements in the application is that if the applicant should be accepted as a member, the acceptance of benefits from the relief fund for injury or death should operate as a release of all claims for damages against the company arising from such injury or death, and that the plaintiff or his legal representatives would execute such further instruments as might be necessary to formally evidence such acquittance; that the application was duly approved by the defendant, and the plaintiff thereupon accepted and admitted as a member in the relief fund; that after the

date of the alleged injury the plaintiff accepted from the relief fund, for his said injuries, certain payments, made from time to time, aggregating the sum of $82, and gave receipts and acquittances for the same, which operated as a release of all the claims for damages alleged in the suit.

The plaintiff did not deny the facts thus alleged, but, by his pleading and proof, sought to avoid the effect of such alleged release, on the ground that the agreement in question was unknown at the time of the execution of the application for membership, and that it was, in fact, obtained from him by fraud and deceit. The replication setting up the fraud by general averment was sustained on demurrer. *Fivey* v. *Pennsylvania Railroad Co.*, 37 *Vroom* 23. And, under the point we are now considering, the question is was there sufficient proof of the alleged fraud and deceit before the court to send the case to the jury. In such an inquiry we must take that view of the evidence which is most favorable to the plaintiff.

The case shows that the execution of the application for membership took place in the presence of the medical examiner of the defendant, in the relief department at Jersey City, to whom the plaintiff had presented himself for the required physical examination. It occurred at the close of the examination, the results of which are found embodied in the examiner's certificate attached to and forming part of the application, which was partly printed and partly written.

The plaintiff gives his version of the transaction, from which we are asked to gather the elements of the fraud alleged, as follows:

"*Q.* At the time when it was handed to you for execution— that day when you went up to the doctor's office—confine your evidence to what was said to you when the paper was handed to you for execution?

"*A.* He simply shoved it in front of me and told me to sign my name; that it was all a matter of form; that is all.

"*Q.* What was said to you at this time by Dr. Simpson in reference to this document just before you signed it?

"*A.* Nothing whatever.

"*Q.* (The court.) You can read and write?

"*A.* Yes; there is plenty of words I didn't understand.

"*Q.* (The court.) You can read?

"*A.* A little, not much.

"*Q.* You can read print?

"*A.* With the exception of some words.

"*Q.* What, if anything, did Dr. Simpson say to you at this particular time touching the nature of the paper which he asked you to sign?

"*A.* He said it was a benevolent association belonging to the employes of the railroad, and there was so much deducted from their wages every month to contribute toward the support of this fund, according to what class you would go in.

"*Q.* Did he say anything to you about the railroad company's being a part of this fund?

"*A.* Nothing whatever.

"*Q.* Did he say anything to you at this time about your releasing the railroad company in case of any accident to you?

"*A.* No, sir.

"*Q.* Did he request you at any time to sign the paper?

"*A.* When he was all through he shoved it in front of me, and he said, 'Sign it;' I commenced to read it; he said it was all a matter of form—it was immaterial.

"*Q.* How did you commence to read it?

"*A.* I commenced to look at the print out of curiosity to see what it contained, if I could possibly make it out.

"*Q.* Did you read any part of what is written in that left-hand page before he told you that it was a matter of form or immaterial?

"*A.* He would not give me time to read it.

"*Q.* Did you read it?

"*A.* No, I did not.

"*Q.* Did you read at that time anything on either side of the paper?

"*A.* No, sir."

The witness further testified that the doctor did not, at or prior to the time of signing, read to him anything from the

632    COURT OF ERRORS AND APPEALS.

Fivey v. Penna. R. R. Co.          67 N. J. L.

paper, nor from any book like the book of the regulations of the relief fund offered in evidence by the defendant.

Is there to be found in this testimony such elements of fraud or deceit as, under the law, are sufficient to discharge a person who can read and write from the binding force of a contract in writing, otherwise valid, which has been duly executed by him?

The fact that the plaintiff did not choose to read the paper, or the material parts of it, before signing, or did not know its contents at the time, cannot, in the absence of actual fraud, relieve him from its obligations.

This doctrine arises from the well-settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood and assented to its terms.

In *Lewis* v. *Great Western Railroad Co.*, 5 *Hurlst. & N.* 867, where a suit was brought to recover for a sack of clothes, which had been shipped, but not delivered, the defence was that the package was not called for within the time required by the conditions to a receiving note signed by the shipper. The plaintiff testified: "I delivered in a paper, specifying what the things were; I signed it; I did not read the paper; a person told me to sign it; he did not call my attention to the conditions or read them; I think I must have seen the word 'conditions.'" The case was heard before Chief Baron Pollock and his associates, and it was held that there was nothing to rebut the presumption arising from the signature of the paper that the signer understood that the contract was subject to the conditions.

In *Rice* v. *Dwight Manufacturing Co.*, 2 *Cush.* 80, the principle found expression in these words: "A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect."

Other authorities in point are *In re Greenfield's Estate*, 14 *Pa. St.* 491; *Van Deventer* v. *Van Deventer*, 17 *Vroom* 460; *Upton* v. *Tribilcock*, 91 *U. S.* 45; *Vickers* v. *Chicago, Burlington and Quincy Railroad Co.*, 71 *Fed. Rep.* 139; *Wallace*

v. *Chicago Railroad Co.,* 67 *Iowa* 547; *Chu Pawn* v. *Irwin,* 82 *Hun* 607.

To return, then, to the question of actual fraud, the allegation is that fraud was practiced upon the plaintiff, in procuring his signature, by fraudulent representations as to the nature of the paper signed and as to the party with whom plaintiff was contracting.

This averment is based upon the plaintiff's version of what the medical examiner said as to the nature of the paper about to be signed. This has already been recited. It is not a statement as to the contents of the paper, but rather a remark as to its nature. Whether the remark was called out by a question does not appear. The statement is condemned as false and misleading, not because it defines the association as a benevolent one belonging to the employes of the railroad, for that was a fairly accurate description of it. The case shows that the relief fund is for the exclusive benefit of the employes who are members of it and contribute to its support, and who become disabled by sickness or accident, and of the relatives or other beneficiaries in the event of death. It is contended that the statement, though true in fact, became fraudulent and misleading in not stating that the railroad itself was a party to the contract and interested in the association. But the balance of the statement, to the effect that there was so much deducted from the wages of the employes every month to contribute toward the support of this fund, according to the class they should go in, would seem to indicate that the company was connected with it. But to establish a misrepresentation that will invalidate a contract, it must appear that the representations were not only false, but made with intent to deceive, and that the party seeking relief acted upon and was misled by them. It is difficult to see wherein the statement of the medical examiner was false or fraudulent within the rule here stated. Especially must this be so when we look at the other circumstances proved. It must have been in the minds of the parties that the plaintiff would be associated with fellow-employes who were mem-

634 COURT OF ERRORS AND APPEALS.

Fivey v. Penna. R. R. Co. 67 *N. J. L.*

bers of the relief fund, who would be likely to be acquainted with the rules and regulations of the association, and who would readily give such information as plaintiff desired. It also appeared that, very shortly after signing the application, the plaintiff was furnished, according to the regular practice, with a small book, convenient for the pocket, in which was pasted a copy of the certificate of membership, and which contained all the regulations of the relief department and an exact copy of the form of application. This book contained, upon the outside cover, upon the fly-leaf and as headlines upon several pages, the words, in large print, "The Pennsylvania Railroad Voluntary Relief Department." The evidence showed, and the fact was not denied by the plaintiff, that he received the book and certificate over two months before the accident. But in this case it is contended that there are other circumstances giving color to this charge of fraud. The fact is pointed to that, after this statement, the medical examiner "shoved the paper" in front of the plaintiff and "told him to sign" his name; that plaintiff "commenced to read it," and he "was told by the doctor it was all a matter of form—it was immaterial."

In the case of *Van Deventer* v. *Van Deventer, supra,* the objection was that the party who had executed the obligation did not know its nature, and was told by the plaintiff that the papers were of no account and only a formal matter. But since it was not shown that the obligor was defrauded by any representation that the documents were of a different character or import from that plainly appearing on their face, and it appearing that the obligor could read and had liberty to examine the papers, the Supreme Court held the objection insufficient to avoid the obligation.

In considering this question it should also be observed that a charge of fraud must be clearly and distinctly proved by the party who asserts it. The presumption is in favor of innocence, and fraud is not to be assumed on doubtful evidence. *Kerr Fr.* 384.

The point has been pressed also that because the applica-

tion was a long one and contained on the back, in small type, the rules and regulations of the association, this fact should be regarded as a badge of fraud. But, in fairness, it must be said that the application itself, in which was contained the agreement of release upon which the defence is based, and also the book of regulations referred to, were printed in plain, legible type. It was further intimated, rather than argued, that the defence should be regarded with disfavor on the ground that the contract is a hard one from the plaintiff's standpoint. But we see nothing in the case to justify a departure from the ordinary rules applying to the enforcement of contracts. The validity of the agreement in question was passed upon by this court, after very careful consideration, in *Beck* v. *Pennsylvania Railroad Co.,* 34 *Vroom* 232, and it was there held that the contract was not against public policy, nor lacking in mutuality or consideration, nor *ultra vires.*

The case of *O'Neil* v. *Lake Superior Iron Co.,* 30 *N. W. Rep.* 688, was cited for the plaintiff as authority for the proposition that in a case like this the court should be astute to discover a fraud upon the employe in such an action, but it is not in point, because it was shown that the employe could not read and had no knowledge of the terms or conditions of the printed matter.

The other cases cited are not out of harmony with the legal rules herein expressed. There was in the present case an entire failure to show the *indicia* of actual fraud; hence the determination of this point was for the court, and the result follows that the learned trial judge was justified in directing the verdict for the defendant.

There were a number of exceptions taken and sealed to the admission and rejection of evidence by the trial judge, but they are not properly before us and cannot be considered.

The questions overruled, nine or more in number, are all included in a single assignment of error. And the questions rejected, twelve or more in number, are likewise embraced in a single assignment. The objection raised by the defendant to these assignments is that they are multifarious.

These assignments are framed in entire disregard of the rules of pleading and of the practice of this court, and cannot, for that reason, be considered. *Associates* v. *Davidson,* 5 *Dutcher* 415; 2 *Encycl. Pl. & Pr.* 938, *note* 5; 3 *Am. Dig.* (*Cent. ed.*) 3028.

It may be stated, however, that the only exceptions under these last assignments pressed upon our consideration at the argument were those taken to the overruling of questions designed to elicit from the plaintiff an answer to the questions whether, at any time from the date of his application until the occasion of his signing the last receipt for benefits, he knew he would be releasing his cause of action against the railroad company by so doing. It is quite apparent, from what has already been said, that, in the absence of proof of fraud, the evidence to be thus elicited was entirely immaterial and was properly overruled.

We find no error in the record, and the result is that the judgment below must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.

*For reversal*—None.