16 N.J. Super. 427 (1951)
84 A.2d 748
LOUIS PETACCIA, PLAINTIFF-RESPONDENT,
v.
JOHN GALLIAN, AND OTHERS, ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1951.
Decided November 30, 1951.
*428 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Charles Wm. Kappes argued the cause for the respondent (Mr. A. Michael Lepore, attorney).
Mr. Leo Solomon argued the cause for the appellants (Messrs. Solomon & Solomon, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
The complaint on which the judgment is based alleges: That defendants agreed to sell and plaintiff to buy for $2,000 an automobile of a make known as the Tucker car, and that plaintiff paid defendants $331.60 on account thereof; that the defendants have failed to deliver the automobile to plaintiff, although he has made frequent demands, etc. The district court awarded judgment to plaintiff for $331.60 with interest and costs.
The judgment must be reversed for the evidence gives it no support. The sum of $331.60 was not paid on account of an automobile, but was the purchase price for certain specified automobile accessories listed in a written contract of sale signed by both parties. The writing, which is nowise ambiguous, controls. Winoka Village v. Tate, 16 N.J. Super. 330 (App. Div. 1951). The respondent tries to avoid this familiar rule by asserting that he was induced by fraud to sign the contract, citing Schlossman's, Inc., v. Niewinski, 12 N.J. Super. 500 (App. Div. 1951). But he neither alleged fraud in his complaint nor proved any. Even if he did not read the contract, plaintiff is concluded by its terms. Fivey v. Penn. R.R. Co., 67 N.J.L. 627 (E. & A. 1902); Champlin v. Davis, 94 N.J.L. 523 (E. & A. 1920); Kearney v. National Grain Yeast Corp., 126 N.J.L. 307 (E. & A. 1941).
*429 The facts are clearly enough disclosed by the proofs. A company had been organized to manufacture a newly designed car  the Tucker. The company had devised a scheme for attaching prospective customers, since none of its automobiles were yet ready for sale. Tucker dealers would sell, or make contracts for the sale of accessories, and would give to the purchasers in sequence options to buy Tucker automobiles, "if, as and when they are produced and made available for delivery." It may seem astounding to us that any customers could be found on such terms; but at the time  1947 and into 1948  the demand for automobiles far outran the supply, and the Tucker, though never actually put on the market, was widely advertised.
So, in June, 1948, plaintiff called to buy a Tucker at the place of business of defendants, who had secured the Tucker agency in Union City. Of course, he found no Tucker cars there. "He told me they were manufacturing * * *. Not for sale. They were manufacturing. That's what he told me." Plaintiff was also told of the accessories plan. "So then he says, `The only way you get it is you got to purchase this (meaning the set of accessories) and that's the only way you get that car.'" Whether the accessories were actually in defendants' store, or were chosen from an illustrated catalogue, is not clear; but plaintiff did not receive them when he signed the contract. He and one of the defendants discussed which accessories plaintiff should buy. "He says, `If you want, take the best.' And he means that I get leather. Leather was going to cost me fifty or sixty dollars more. So I think it over, and I think it going to last me a long time. So I give him $331.60 check for those kind of accessories." It is true that plaintiff spoke of his payment to defendants as a deposit on the purchase of a Tucker automobile, but it still is clear that he knew that what he was paying was the purchase price of the accessories.
We repeat that there is no evidence of fraud on the part of defendants. We have no reason to suppose that they foresaw that the Tucker would never actually be brought into *430 production and put on the market. It may be that plaintiff will be able to amend his complaint so as to show a cause of action consonant with the facts. Both parties probably entered into the contract for accessories in implicit confidence that Tuckers would soon be available. If they had not so believed, they would not have made the contract. Counsel for plaintiff may well consider whether the doctrine of frustration is followed in New Jersey and whether it gives his client a cause of action. See Restatement, Contracts, §§ 288, 468; Williston on Contracts, § 1954, and Perlee v. Jeffcott, 89 N.J.L. 34 (Sup. Ct. 1916).
Judgment reversed.