**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4007-23

BARRY ROZEN,

    Plaintiff-Appellant,

v.

Z GEN MOTORS, LLC,

    Defendant-Respondent.

_____

> Submitted May 22, 2025 – Decided June 9, 2025
>
> Before Judges Mawla and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. SC-000681-24.
>
> Barry Rosen, appellant pro se.
>
> William Coleman, respondent pro se.

PER CURIAM

In this Special Civil Part matter, plaintiff Barry Rozen (seller) appeals from an August 8, 2024 order dismissing his breach of contract action and

judgment in favor of defendant Z Gen Motors, LLC's (buyer), voiding the parties' contract for the sale of a vehicle to defendant due to plaintiff's failure to provide title under the terms of their contract. For the reasons that follow, we affirm.

The relevant facts are undisputed. Plaintiff contacted defendant, a car dealership, which operates as Car Buyer USA, via its website to inquire about selling his newly leased vehicle, a 2024 Lexus RZ.[1]

Defendant initially offered $48,000 and arranged for a third-party inspection of the vehicle at plaintiff's residence. Following the inspection, the parties agreed to a reduced price of $45,550 and signed a vehicle purchase contract. The contract reflected an outstanding loan to Lexus Financial Services (LFS), the servicer of plaintiff's original vehicle loan, in the amount of $41,534.19 and plaintiff asserted there were no other liens or encumbrances on the vehicle. Additional terms of the contract included:

> Seller agrees that upon receipt of [their] EQUITY (if applicable) and/or "PROOF OF PAYMENT" to the lender, Seller agrees to release the vehicle to Buyer upon request.
>
> . . . .

---

[1] Plaintiff testified the lease permitted a third-party buyout.

Seller understands, acknowledges, and accepts that it is their responsibility to provide the Buyer the necessary documents ie: Executed Purchase Order, Driver's License(s), Registrations, <u>Titles</u>, Power of Attorney . . . , Loan Information and or delivering the Vehicle to the closest Facility if required within [seventy-two] hours from the date this Purchase Order was delivered to the Seller. Failure to comply with these requirements within the [seventy-two]-hour period, the Buyer has the right to cancel the Contract without PENALTY. Seller hereby gives Buyer limited power-of-attorney to apply for replacement title if necessary.

. . . .

If Buyer is paying off seller's lien, seller agrees to forward title to buyer upon receipt or provide necessary documentation to have lien holder send title directly to buyer. <u>If seller's lienholder is unable to provide a guarantee of title prior to payoff, buyer may cancel contact</u> with no penalty. If purchase price exceeds loan payoff amount, buyer will pay seller the equity portion of purchase price upon receipt of lien free negotiable title. This contract replaces and supersedes all prior agreements and understandings, whether oral or written, between Buyer and Seller.

[(Emphasis added).]

Plaintiff affixed his initials, B.R., to the end of each provision in the contract.

The parties executed the contract on June 11, 2024. However, title to the vehicle was not forthcoming from plaintiff or Lexus.

3

According to defendant, when it contacted Lexus to inquire about the vehicle title, Lexus confirmed it did not have the title.[2]  Thirteen days after the parties' contract, defendant emailed plaintiff stating, "I have been calling [LFS] daily to inquire as to their receipt of the physical title.  As of today, they are reporting that the physical title has still not been received."

When defendant failed to transmit the funds, plaintiff notified it of the breach, and defendant, in turn, advised him the contract was not binding and was only an estimate.  Plaintiff ultimately traded-in the vehicle and sued defendant to recover his alleged losses of $8,050, representing the difference between the trade-in value and the amount defendant had agreed to pay to buy the vehicle under the contract.

At trial, plaintiff testified he voluntarily agreed to reduce his damages to the $5,000 maximum threshold amount allowed in the Special Civil Part.  He further testified "[defendant's representative] is correct in that [his] understanding is that [LFS] did not receive the physical paper of the title yet," and when he contacted the Motor Vehicle Commission, he was advised that "title was in limbo."  On rebuttal, he admitted title to the vehicle was never in his

---

[2]  Plaintiff did not have the title because the vehicle had been leased through LFS and had an outstanding balance due on the loan.

A-4007-23

possession, and he did not receive confirmation from Lexus that they had title, thus the title could not be provided. Regarding his claim for damages, plaintiff testified he "received competing offers for" the vehicle but decided to trade it in instead of selling it.

Defendant's representative testified neither plaintiff nor Lexus ever turned over the title to the vehicle, "[s]o, finally, we just told [plaintiff], listen, we would love . . . to buy this car . . . . Unfortunately, pursuant to the contract[,] the . . . lien holder does not have the title. We aren't able to proceed." Defendant further testified "[i]t sounds like he's . . . bought the car, was dissatisfied, or maybe there was some tax advantage with the . . . tax credits. But . . . I understand he put nothing down and made no payments on the car." Defendant's representative further testified defendant "made a good effort" to secure title from Lexus.

After the conclusion of the evidence, the court determined the

> contract is clear enough in its terms that a title has to be transferred, if not, within [seventy-two] hours, certainly even in equity within a reasonable period of time.
>
> There is no finding here that the title was ever actually available to defendant. With . . . no such finding, the contract can be voided by its terms by the buyer, as it was here.

Thereafter, the court dismissed the case.

A-4007-23

Our review of a judgment entered following a bench trial is very limited. We apply a deferential standard of review. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). When the trial judge acts as the fact finder in a bench trial, we "must accept the factual findings of" that trial judge, when such findings "are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"[I]t is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999) (citing Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996)). If the terms of a contract are clear, "we must enforce the contract as written and not make a better contract for either party." Ibid. (quoting Schenck, 295 N.J. Super. at 450). "However, a contract must be interpreted considering the surrounding circumstances and relationships

6

of the parties at the time it was entered into, . . . to understand their intent and to give effect to the nature of the agreement as expressed by them." Ibid. (citing Schenck, 295 N.J. Super. at 450-51).

Our courts presume that the parties to a contract have read and understood their agreements. Silvestri v. S. Orange Storage Corp., 14 N.J. Super. 205, 212 (App. Div. 1951) (citing Fivey v. Pa. R.R., 67 N.J.L. 627, 632 (E. & A. 1902)). It is a "well-settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood, and assented to its terms." Ibid. (quoting Fivey, 67 N.J.L. at 627).

Plaintiff argues the trial court erred in dismissing his complaint because: defendant had waived the seventy-two hour title requirement given that defendant knew the vehicle was subject to a loan; the court incorrectly interpreted the contract language and associated conditions (related to the transmittal of the vehicle title); the lack of a physical title does not void the transaction; and the court violated his due process rights by not allowing him a full and fair opportunity to present his case. We reject plaintiff's contentions and affirm, finding no merit to his arguments.

The record is clear plaintiff attempted to sell his newly acquired leased vehicle without possession of the title. He agreed to the contract's terms

including to provide title "within . . . [seventy-two] hours from the date [the] Purchase Order was delivered to the Seller," and upon "[f]ailure to comply with these requirements within the [seventy-two] hour period, the Buyer has the right to cancel the Contract without PENALTY." Plaintiff assented to and understood his responsibility to provide defendant with all necessary documents, including the vehicle's title within the timeframe prescribed in the contract.

There is no dispute plaintiff failed to provide title to the vehicle within seventy-two hours from the date the purchase order was delivered. Plaintiff acknowledges that he provided all other documents, save title. In fact, both plaintiff and defendant testified regarding their efforts to secure title from Lexus to no avail.

In reaching its decision, the court noted defendant is in the business of flipping cars, "[t]hey buy your car. They [have] got to sell it next week. Otherwise, they have carrying charges." The court was persuaded plaintiff could not provide title, noting "[t]here is no finding here that the title was ever actually available to . . . defendant."

Pursuant to basic contract principles, the contract was voidable based on plaintiff's inability to produce the vehicle's title in accordance with the terms of the contract. As the court found, it was "clear enough in its terms that a title has

8

to be transferred, if not, within [seventy-two] hours, certainly even in equity within a reasonable period of time." This determination is entitled to deference because it is based on the express language contained in the parties' contract. D'Agostino, 216 N.J. at 182.

Moreover, there is no support for plaintiff's contention the obligation to provide title within seventy-two hours does not apply where there is a lien on the vehicle and title is not in the seller's possession. Nothing in the contract supports this argument and we decline to supply or read such terms into the contract. Graziano, 326 N.J. Super. at 342 (citing Schenck, 295 N.J. Super. at 450).

Lastly, plaintiff's due process rights, in this case the right to be heard, were not violated. See Horne v. Edwards, 477 N.J. Super. 302, 324 (App. Div. 2023) ("[D]ue process requires a meaningful opportunity to be heard.").

Plaintiff had a fair opportunity to present his case and evidence. The court considered the testimony of both parties, including plaintiff's admission defendant's representative was correct in that Lexus had not received the physical title and motor vehicles advised him that title to the vehicle was "in limbo." The judge also permitted plaintiff to offer rebuttal testimony after defendant had testified. To the extent plaintiff is referring to the court's

insistence he answer whether he had title, we discern no error on the part of the court in directing plaintiff to answer that question. Pursuant to N.J.R.E. 611, the court appropriately addressed plaintiff's unresponsiveness to this question by redirecting him to ensure he answered the question. In any event, plaintiff does not explain what evidence he was barred from adducing in support of this contention. Plaintiff's due process arguments lack merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division