**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3929-24

HARVEST RESTAURANTS
GROUP, LLC, CHESTER
GRABOWSKI and ROBERT
J. MOORE,

      Plaintiffs-Appellants,

v.

THOMAS P. ADACH, and
TECHTON, LLC,

      Defendants,

and

STRUCTURAL WORKSHOPS,
LLC, and JOSEPH DIPOMPEO,

      Defendants/Third-Party
      Plaintiffs-Respondents,

v.

KRZAK CONSTRUCTION,

      Third-Party Defendant.

_____

Argued May 14, 2026 – Decided June 1, 2026

Before Judges Mawla, Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2542-19.

Jay J. Rice argued the cause for appellants (Nagel Rice LLP, attorneys; Jay J. Rice and Bradley L. Rice, of counsel and on the briefs).

John H. King argued the cause for respondents Structural Workshops, LLC and Joseph DiPompeo (Thompson Becker, LLC, attorneys; John H. King, of counsel and on the brief; Francesca R. Collins and Christopher D. Hartt, on the brief).

Timothy F. Hegarty argued the cause for amicus curiae American Council of Engineering Companies of New Jersey (Zetlin & De Chiara, LLP, attorneys; Timothy F. Hegarty, on the brief).

PER CURIAM

Plaintiffs Harvest Restaurant Group, LLC, Chester Grabowski, and Robert J. Moore appeal from a February 13, 2025 order granting defendants Structural Workshops, LLC and Joseph DiPompeo partial summary judgment and an April 16, 2025 order denying plaintiffs reconsideration of the February 2025 order. We affirm.

Plaintiffs leased a building from Tarta Luna, LLC in Westfield to operate a restaurant on the premises. The lease involved extensive repairs, rebuilding,

and construction of an addition. Plaintiffs hired an architect for the project. In September 2014, plaintiffs and defendants entered a contract for defendants to act as the engineer of record. Defendants' fee was $9,950. The agreement included a limitation of liability provision, which read as follows:

> In recognition of the relative risks . . . of the project[,] . . . [defendants'] total liability to [plaintiffs], for any and all . . . claims [or] losses . . . arising out of this agreement from any cause . . . shall not exceed the total amount of $50,000 or the amount of fees paid to [defendants] . . . (whichever is greater). Such causes include, but are not limited to, [defendants'] negligence, errors, omissions, strict liability, breach of contract[,] or breach of warranty.

The local planning board granted preliminary and final site plan approval to plaintiffs in October 2014. Construction took place during 2015, and the restaurant opened in November 2016.

In August 2016, Tarta Luna and the owner of an adjoining building sued plaintiffs to stop construction, alleging the construction and design made the building unsafe because it increased the load on the building's walls to a dangerous level. DiPompeo had certified he believed the construction was up to code. The architect and municipal construction code official confirmed this as well. Defendants, Tarta Luna, and a court-appointed expert prepared

A-3929-24

engineering reports, which were admitted into evidence. DiPompeo testified at trial but was not a party in the lawsuit.

In December 2017, the Tarta Luna court found defendants applied the wrong building code, and there was a safety risk to the public. The court ordered the restaurant to close for repairs. The restaurant reopened in December 2018.

In December 2019, plaintiffs sued defendants, alleging engineering malpractice and breach of contract. Grabowski was deposed during discovery. He testified he signed the contract with defendants, had the opportunity to negotiate its terms, and have it reviewed by an attorney but did not do so. Grabowski recognized the limitation of liability provision and, though he had the opportunity to read it, he could not recall doing so.

Plaintiffs' engineering expert was also deposed and testified defendants "improperly applied the building code and neglected [to] do a full structural analysis and design." She agreed with the Tarta Luna court's finding the construction was a safety threat to the public. Defendants' engineering expert reported defendants complied with the industry standard of care, the proper building code, and the project "did not []pose immediate danger to the public."

A-3929-24

Both parties moved for summary judgment. On February 13, 2025, the motion judge issued a detailed written opinion denying plaintiffs' motion and granting defendants' motion for partial summary judgment.

Pertinent to the issues raised on appeal, plaintiffs argued the limitation of liability provision violated public policy and was an exculpation clause. The clause was exculpatory because it did not ensure defendants' performance.

The motion judge found the limitation of liability provision was not an exculpation clause. He observed defendants' liability was capped at $50,000, which was a multiple greater than five times their $9,950 fee. Discovery showed plaintiffs "had the opportunity to read the . . . [c]lause and object if [they] chose to do so. [They] did not. Plantiff[s] also did not have an attorney review the contract despite having the opportunity to do so. There [wa]s no merit to any argument of unequal bargaining power." The judge concluded the limitation of liability provision was enforceable and granted defendants partial summary judgment.

Plaintiffs moved for reconsideration. They argued the limitation of liability provision was invalid as a matter of public policy because defendants' conduct created a public safety hazard. Plaintiffs pointed to Hubner v. Spring Valley Equestrian Center, 203 N.J. 184 (2010); Marcinczyk v. State of New

A-3929-24

Jersey Police Training Commission, 203 N.J. 586 (2010); and Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012), as support for the proposition parties cannot contractually avoid liability where they act in a manner that endangers the public. The Tarta Luna court's finding defendants deviated from the standard of care was evidence of the public danger.

The motion judge distinguished these cases. He noted Hubner involved the operators of an equine facility under the Equine Act, which generally bars suits against facility operators, except in instances where they act with a negligent disregard for safety. N.J.S.A. 5:15-9(d). No such statute applied to defendants here. Wilson also involved a statutory limitation of liability related to telephone companies, which the judge found inapplicable for similar reasons.

In Marcinczyk, the Court held a public entity cannot condition the provision of public services on the recipient's waiver of liability because it violated "the public policy expressed by the Legislature in the Tort Claims Act [(TCA)]." 203 N.J. at 595-96. The judge observed the limitation of liability provision here does not injure the public and the TCA did not apply.

Plaintiffs also argued defendants' failure to adhere to the professional standard of care was a separate reason to invalidate the limitation of liability provision. They pointed to Lucier v. Williams, which held, regardless of the

level of damages, limitation of liability provisions in professional service contracts are disfavored because they immunize the malfeasant party from their own negligence. 366 N.J. Super. 485, 492-93 (App. Div. 2004). Plaintiffs argued Lucier required the court to consider the disparity between the consequences of negligence amongst the parties.

The judge found no evidence the limitation of liability provision immunized defendants because they were still liable for multiples of their expected compensation. Lucier's disparity between the consequences of the negligence standard did not apply because there was an exculpation clause in that case, but there was none here. Further, the disparity standard applied where the parties have unequal bargaining power, which the judge found did not exist here because "[p]laintiff[s are] a sophisticated business[,] owning and operating multiple restaurants[,] . . . and were afforded the opportunity to review . . . and present the contract to an attorney." The liability cap was a better measure than the damages alleged by plaintiffs because it was the product of mutual assent.

Plaintiffs argued whether the public safety hazard created by defendants invalidated the limitation of liability provision and whether deviation from the standard of care permitted them to rely upon the limitation of liability provision were disputed facts, which prevented the entry of summary judgment. The

7

motion judge found no law to support these propositions. He noted "limitation of liability provisions are written into contracts under the exact assumption that one party may be negligent in its performance." Because the clause here was not exculpatory, "it would be unfair . . . to render the provision unenforceable." The judge denied the reconsideration motion.

On August 4, 2025, a different judge tried the remaining claims. During the hearing, the parties drafted a consent order entering judgment in favor of plaintiffs and against defendants for $50,000, pursuant to the limitation of liability provision. The consent order reserved plaintiffs' right to appeal from the February 13 and April 16, 2025 orders. The parties agreed if plaintiffs prevailed on appeal, the judgment against defendants would be vacated and the matter would proceed to a jury trial. Plaintiffs filed their appeal, and we subsequently granted the American Council of Engineering Companies of New Jersey's motion to appear as amicus.

I.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a

8

matter of law." R. 4:46-2(c). We review the trial court's grant or denial "of a motion for summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

"Summary judgment should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

However, summary judgment is not meant to "shut a deserving litigant from [their] trial." Brill, 142 N.J. at 540 (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 77 (1954)). Nor is it appropriate when discovery is incomplete and critical facts are within the moving party's knowledge. Friedman, 242 N.J. at 472.

"If there is no genuine issue of material fact, [the court] must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The enforceability of contract provisions is a question of law also subject to de novo review. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). No deference is owed to a trial court's contractual interpretation. Ibid.

We review the adjudication of a motion for reconsideration for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "An

abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (internal quotation marks omitted) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

II.

Plaintiffs argue if the motion judge had applied Lucier to analyze the limitation of liability provision, he would have found the provision unenforceable as against public policy. The judge erred by not examining the public policy exceptions to the enforceability of such a provision both at the summary judgment and reconsideration phases.

Plaintiffs reiterate defendants were not entitled to the protection of the provision where their conduct created a public safety danger. The judge misread Hubner, Marcinczyk, and Wilson by noting the statutes discussed in them did not cover defendants' conduct here. The enforceability of the limitation of liability provisions in those cases did not turn on statutory law.

Plaintiffs argue the motion judge ignored the fact N.J.S.A. 45:8-27, which governs the licensing and qualifications of engineers, also requires them to "safeguard life, health and property, and promote the public welfare." The judge

11

should have recognized that where a party has a statutory duty, it cannot limit its liability. The limitation of liability provision, therefore, injured the public because it interfered with public welfare and safety by immunizing defendants.

Plaintiffs contend liability may not be limited where, as here, a party is a licensed professional and breaches the professional standard of care. The judge misunderstood Lucier because he focused on comparing defendants' fee and the limitation of liability cap, and should have instead considered the difference between the liability created and the cap. He also misconstrued Lucier when he concluded the parties had equal bargaining power because Lucier held a licensed professional cannot shield themselves from liability, even where the parties are sophisticated and have equal bargaining power.

Plaintiffs argue the judge acknowledged at the motion for reconsideration there were material questions of fact related to the reasonableness of the $50,000 liability cap yet did not analyze them. They reiterate reasonable jurors could determine this limitation of liability was essentially an exculpation clause. There was also a genuine material dispute about whether defendants' conduct constituted professional negligence and caused a public safety danger. These were disputed facts for a jury to decide.

A-3929-24

## III.

"A basic tenet of [New Jersey] law is the doctrine of freedom of contract." Marcinczyk, 203 N.J. at 592. When arms-length contracts are unambiguous, they will be enforced as written unless evidence of fraud, duress, illegality, or mistake is shown. Id. at 592-93. This is because it is "conclusively presumed" the parties understood and assented to the legal effect by signing the contract. Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (quoting Fivey v. Pa. R.R. Co., 67 N.J.L. 627, 632 (E. & A. (1902))). "Generally, when the terms of a contract are clear, the construction and effect of the contract is a matter of law which must be resolved by the court and not the jury." Mango v. Pierce-Coombs, 370 N.J. Super. 239, 256 (App. Div. 2004).

"As a general and long-standing matter, contracting parties are afforded the liberty to bind themselves as they see fit." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 302 (2010). Courts may not rewrite agreements for a party "for the purpose of giving that party a better bargain." Lucier, 366 N.J. Super. at 491. Lucier set forth a framework to determine whether a limitation of liability is enforceable by requiring courts to examine, with particular attention, "any inequality in the bargaining power and status of the parties, as well as the substance of the contract." Id. at 492.

13

Parties may allocate risks through a variety of tools, including exculpatory clauses and limitation of liability or damages clauses. Exculpatory clauses are "contractual provision[s] relieving a party from liability resulting from a negligent or wrongful act." Black's Law Dictionary 648 (9th ed. 2009). Limitation of liability or damages clauses are "contractual provision[s] by which parties agree on a maximum amount of damages recoverable for a future breach of the agreement." Black's Law Dictionary 1013 (9th ed. 2009). Such contract provisions will be invalidated if either unconscionable or against public policy. Lucier, 366 N.J. Super. at 491.

The "focus [of the] inquiry [is] whether the limitation is a reasonable allocation of risk between the parties or whether it runs afoul of the public policy disfavoring clauses which effectively immunize parties from liability for their own negligent actions." Id. at 492. A provision will be found enforceable if the damages cap sufficiently provides a realistic incentive to a party to act diligently. Ibid. "It is clear that private parties to a transaction lacking public interest are bound by their agreements relieving against liability for negligence." Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 580 (App. Div. 1955).

Our Supreme Court has stated:

> [A]n agreement is against public policy if it is injurious to the interest of the public, contravenes some

> established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or . . . is at war with the interests of society and is in conflict with public morals.
>
> [Marcinczyk, 203 N.J. at 594 (quoting Frank Briscoe Co. v. Travelers Indem. Co., 65 F. Supp. 2d 285, 312 (D.N.J. 1999)).]

Public policy is informed by principles espoused by the Legislature and judicial opinions. Ibid.

In Lucier, the plaintiff homebuyers brought claims against the defendant home inspector, but the defendant argued a limitation of liability provision in their contract limited his liability to one-half of the home inspection fee. 366 N.J. Super. at 488. We concluded the provision violated public policy because it was a contract of adhesion and did not incentivize the defendant to act diligently. Id. at 493. The parties had unequal bargaining power because the plaintiffs were unsophisticated and never had the opportunity to seek legal advice. Ibid. The limitation was essentially an exculpatory clause because the cap of one-half of the inspection fee was drastically minimal compared to the consequences of a breach. Id. at 495.

Having considered the record pursuant to these principles, we reject plaintiffs' arguments and affirm substantially for the reasons expressed in the motion judge's opinions. We add the following comments.

15

The parties' dispute over the limitation of liability provision is not a jury question. There is no evidence the provision was ambiguous or the contract was entered into because of fraud, duress, illegality, or mistake. Where a contract's terms are plainly written, our obligation is to enforce those terms.

Plaintiffs fault the motion judge for distinguishing the cases cited to him, including Hubner, Marcinczyk, and Wilson, based on the statutes applicable in them, and point us to N.J.S.A. 45:8-27 and argue the judge ignored the statute's public policy considerations, which we highlight next. In relevant part, N.J.S.A. 45:8-27 reads as follows: "In order to safeguard life, health and property, and promote the public welfare, any person practicing or offering to practice professional engineering . . . in this State shall hereafter be required to submit evidence that [they are] qualified so to practice and shall be licensed as hereinafter provided." (Emphasis added).

Plaintiffs' statutory argument is unpersuasive because when read with the rest of the statute, the public welfare language is nothing more than an explanation of why engineers must be licensed. The language has nothing to do with an engineer's liability, let alone the enforceability of a limitation of liability provision, unless an engineer is practicing without a license. The motion judge

16

correctly found the limitation of liability provision did not harm the public's interest or cause the contract to interfere with public welfare or safety.

We conclude plaintiffs have not shown a public policy exception that would invalidate the limitation of liability provision as a matter of law. As a result, summary judgment was properly granted to defendants and the denial of the motion for reconsideration was not an abuse of discretion. The remaining arguments raised on appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3929-24